FILED
97 JUL 14 AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

LIBERTY NATIONAL LIFE INSURANCE
COMPANY, )
    PLAINTIFF, )
VS. )    CV97-H-0977-E
CLARA H. McLENDON, )
individually, in her capacity
as guardian for the descendant, )
Charles E. Hicks and as
Conservator of the Estate of )
Charles E. Hicks;
MILLER FUNERAL HOME, INC.; and )
HUGHLEN T. HICKS,
)
    DEFENDANTS.

ENTERED
JUL 1 4 1997

## MEMORANDUM OF DECISION

The court has before it the motion for partial summary judgment filed by defendant Miller Funeral Home on June 4, 1997. Pursuant to the court's June 5, 1997 order, the motion was deemed submitted for decision, without oral argument, as of July 3, 1997.

### I. FACTUAL BACKGROUND

Charles Hicks had Down's Syndrome. See McLendon Counterclaim at ¶ 2. Because of this condition, Charles was cared for by his brothers and sister, Arthur Hicks, Hughlen T. Hicks, and Clara Lou Hicks McLendon, his entire life. Id. at ¶ 1,2,3.

14

On March 14, 1983 Charles Hicks applied for and was later issued an insurance policy from Liberty National Life Insurance Company ("Liberty National") in the amount of $4,000.00 (Policy number 26623786). See Complaint ¶ 7. Then on March 1, 1990, Charles Hicks applied for and was later issued a second insurance policy from Liberty National in the amount of $5,000.00 (Policy number 30760295). Id. at ¶ 8. Both policies initially listed the insured's brother, Arthur L. Hicks, as the beneficiary. Id. at ¶¶ 7,8.

On or about November 1, 1995, Change of Beneficiary Forms were completed naming Charles' other brother, Hughlen T. Hicks, as the primary beneficiary on both policies. See Exh. A to Complaint. On October 11, 1996, Charles Hicks died. See Complaint ¶ 10; Counterclaim ¶ 4.

At the time of Charles Hicks' death, both insurance policies remained in effect. Id. Liberty National received claims on these policies from his sister, Clara McLendon (Exhibit B to Complaint) and his brother, Hughlen T. Hughes (Exhibit C to Complaint). On or about October 11, 1996, McLendon assigned her claim for proceeds from policy number 26623786 to Miller Funeral Home for the payment of the $4,000.00 owed to Miller. See Exh. B to the Complaint; Counterclaim ¶ 6.

On October 21, 1996, attorney H. Bayne Smith sent a letter to Liberty National on behalf of the Estate of Charles Hicks.[1]

---

[1] Smith was appointed as Administrator of Charles Hicks' estate by the Judge of Probate in Calhoun County, Alabama as of March 25, 1997. See Counterclaim ¶ 7.

2

See Exh. D to Complaint. Smith's letter to Liberty National requests that all proceeds from the insurance policies be paid to the estate of Mr. Hicks. Id. Smith asserts that Charles Hicks never possessed the necessary competence to execute a beneficiary designation. Id. According to Smith, all proceeds should be considered to be held in constructive trust for the benefit of his estate. Id.

## II.  LEGAL ANALYSIS

On April 21, 1997 Liberty National filed a complaint in interpleader requesting that the court make a determination as to the proper payment of the proceeds from these two insurance policies in the face of conflicting claims. At that time, Liberty National deposited $9,280.13 with the court, representing the proceeds from the two insurance policies and interest earned up to April 21, 1997.

Defendants Clara H. McLendon[2] and Miller Funeral Home filed answers to the complaint. Defendant Hughlen T. Hicks sent a letter dated April 29, 1997 as his response to the complaint.

On June 4, 1997, Miller Funeral Home filed a motion for partial summary judgment requesting that $4,000.00 of the proceeds from the insurance policies be paid to it for funeral services performed. Miller Funeral Home points out that neither of the co-defendants challenge its right to this payment.

---

[2] Counsel for Liberty National filed a suggestion of death indicating that defendant Clara McLendon passed away on or about May 25, 1997.

3

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

By a letter dated June 12, 1997 counsel for Miller Funeral Home submitted a copy of a letter signed by co-defendant Hughlen T. Hicks which states that Hughlen T. Hicks does not dispute the claim of Miller Funeral Home to be paid $4,000.00 from the proceeds of an insurance polices belonging to Charles Hicks. In addition to formally assigning Miller Funeral Home her rights in the proceeds of policy number 26623786, McLendon states in her answer that she does not contest the payment of these funds to Miller Funeral Home. See Counterclaim at ¶ 8. Neither Liberty National nor the co-defendants have presented any evidence in opposition to the motion.

Therefore, it is clear that no material issue of fact exists in relation to Miller Funeral Home's right to recover $4,000.00

4

from the insurance policy proceeds deposited with the court. Miller Funeral Home is entitled to judgment in its favor for the payment of $4,000.00 from the funds deposited. A separate judgment in favor of Miller Funeral Home will be entered.

The court notes that it is undisputed that Charles Hicks suffered from Down's Syndrome his entire life. Attached to the complaint is the change of beneficiary form dated November 1, 1995, that changes the beneficiary on the policies from Arthur Hicks to Hughlen Hicks. In his April 29, 1997 letter, Hughlen Hicks states that he was named as beneficiary after the death of Arthur Lee Hicks. Hughlen Hicks also states that he was serving as Charles Hicks' guardian at that time.

In the October 21, 1996 letter to Liberty National, the attorney for the estate and for McLendon, H. Bayne Smith, states that a second change of beneficiary request was submitted to Liberty National on September 25, 1996. See Exh. D to the Complaint. According to the letter, the change of beneficiary request was rejected by Liberty National due to questions concerning the authority of McLendon. Id. In her counterclaim, McLendon asserts that she was appointed as Charles Hicks' guardian and conservator at the time of his death. See Counterclaim at ¶ 3.

Based on the evidence presented, it appears that the following questions must be addressed in order for the court to determine whether Hughlen Hughes and/or the heirs/designees of McLendon are entitled to the remaining proceeds:

(1) Who signed the November 1, 1995 change of beneficiary form and in what capacity?

(2) Is/was the November 1, 1995 change of beneficiary form valid?

(3) Was there any subsequent change of beneficiary forms executed?

(4) If the answer to question (3) above is "yes," who signed the form and in what capacity?

(5) If the answer to question (3) above, is "yes," what effect, if any, did the signing of that form have on any prior existing, valid designation of a beneficiary?

(6) If the answer to question (3) above is "yes," was it ever submitted to Liberty National in accordance with policy provisions?

(7) Was Charles Hicks competent to designate a beneficiary at the time of the original designation?

DONE this 14th day of July, 1997.

*James H. Hancock*
SENIOR UNITED STATES DISTRICT JUDGE